[Civ. No. 18.   Fifth Dist.   Nov. 22, 1961.]

Estate of VERNE K. DOUGLAS, Deceased. VEO M. DOUGLAS, Claimant and Appellant, v. VICKIE KAY DOUGLAS, a Minor, etc., Claimant and Respondent.

Vizzard, Baker, Sullivan & McFarland and Allan H. Mc-Farland for Claimant and Appellant.

Procopio, Price, Cory & Fisher, Young, Wooldridge & Paulden and A. C. Paulden for Claimant and Respondent.

STONE, J.—Decedent, who died August 6, 1958, had his attorney prepare a will which was executed May 25, 1955. Prior to making the will he had been divorced from his wife. The will devised and bequeathed all of the testator's estate to the Security First National Bank of Los Angeles in trust, primarily for the benefit of testator's minor daughter, his only child. Income was to be used for her support and education, with distribution of corpus at age 35. There were certain other conditions which will be discussed later. On November 17, 1956, decedent executed a codicil. Although witnessed, it was holographic in nature, having been written by decedent without legal advice. The codicil reads as follows:

"It is my purpose by this document, written in my own hand, to modify the will that I have made and delivered to the Security-First National Bank of Los Angeles as follows:

"In the event of my death I give to my brother Veo M. Douglas and/or his wife Dorothy Douglas my safe together with all contents, also the contents of my safe deposit box at the Security First National Bank, also the personal belongings

in my Bakersfield apartment except my gun and automatic pistol, which I give to my stepson Lynn Graves. Further in the event of my death I give to Mr. & Mrs. Douglas A. Gillbury the title to my 1957 De Soto (6-18-58 V.K.D.) sedan. It is my wish that my brother keep the money and personal papers in my safe deposit box and turn over to the trust officer such papers needed to execute my will.''

Both the will and the codicil were admitted to probate.

A savings-account book reflecting a deposit of some $6,000 was found in decedent's safe. The principal question presented by this appeal by decedent's brother is whether the language of the codicil, ''In the event of my death I give to my brother . . . my safe together with all contents, . . .'' bequeathed to appellant the funds represented by the bank passbook. The trial court held that it did not.

Respondent concedes that a bank savings-account passbook is a chose in action. (*Ornbaun v. First Nat. Bank,* 215 Cal. 72, 76 [8 P.2d 470, 81 A.L.R. 1146] ; *Watson v. Stockton Morris Plan Co.,* 34 Cal.App.2d 393, 405 [93 P.2d 855].) The question presented is whether a bequest of the contents of a receptacle constitutes a bequest of a passbook which is found among the contents. Counsel are agreed that no California opinion defines the testamentary import of the word ''contents.'' We do not believe that such use of the term admits of a standard definition because its testamentary sense depends upon the intent of the person using the word; that is to say, construction in each case depends upon the intent of the testator, which, in turn, must be determined from the document in which the term is used. It cannot be defined out of context and, as in most cases, what a court may have decided by its interpretation of one will is of little help in discerning the intent of another testator by his use of the same word in a different testamentary document. The question of whether a passbook as a chose in action passes as part of a bequest of contents is discussed in 120 American Law Reports, page 1210. The following summary appears in the annotation at page 1215: ''On the other hand the majority rule is that a bequest of the contents of a receptacle includes choses in action found therein at the death of the testator.'' Logic impels us to follow the majority rule. Had stock certificates been among the contents, it could not be argued seriously that they were not bequeathed as part of the contents. Once it has been determined that it was the testator's intent to bequeath all contents of a receptacle, we see no impediment to the bequest

of a savings-account passbook as a part of the contents. It must be recognized, however, that even under the majority rule the question of whether the chose in action passes as part of the contents of a receptacle is a question of testamentary intent in each case. (120 A.L.R. 1216; 57 Am.Jur. § 1177, p. 769.)

Therefore our task is to determine the intent of the testator. Where there is more than one testamentary document, as here, they must be taken and construed together as one instrument. (Prob. Code, § 101.) All the parts of a will are to be construed in relation to each other, in this case the will and the codicil, to form one consistent whole, if possible. (Prob. Code, § 103.)

■ Looking at the codicil, we find that testator first bequeathed the contents of the safe and of the safe-deposit box. He then made two other bequests, one by a separate and complete sentence. This intervening sentence interrupts the trend of thought concerning the contents of the safe and of the safe-deposit box. After completing all of the bequests, testator added a sentence to the codicil circumscribing the previous blanket bequest of contents of the safe-deposit box. The exclusionary clause, which appears to have been an afterthought, specifically refers to the safe-deposit box. It does not indicate any intention on the part of the testator to limit his bequest of the contents of the safe. This interpretation is consonant with Probate Code, section 104, which reads as follows:

"A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will."

Respondent argues that if we construe the will and codicil together, as we must (Prob. Code, § 101; *Estate of Halsell,* 133 Cal.App.2d 665, 671 [284 P.2d 821]), a different intent of the testator is disclosed. The will establishes a trust, the purpose of which is to provide for the support and education of the minor daughter. Respondent urges that it would be contrary to the testator's manifest intent to take from the trust corpus some $6,000 evidenced by the passbook. This argument overlooks the intent of testator to benefit his brother as well as his daughter, which intent is expressed in both the will and the codicil.

■ The will discloses also that the trust provisions are prefaced by this paragraph: "FOURTH: That a majority of my Estate is under lease to oil companies, leasing same for

operation of oil and gas service stations and I desire same not to be sold as there is monthly income therefrom.'' Thus, from his will it would appear that testator did not consider his money or the cash in the safe-deposit box or in the savings account among the ''majority'' assets of his estate. This is borne out by the appraisal of the estate, which indicates a value of $98,000. It cannot be argued that a bequest of $6,000 would be contrary to the testator's intent as expressed by his will, or defeat the purpose of the trust.

In support of the judgment, respondent asserts that appellant's position rests upon the premise that the passbook was in the safe, not in the safe-deposit box, but that there is nothing in the record to establish where the passbook was found. Respondent prepared the findings which the trial court signed. Among other things the court found:

''III That among the assets of the estate herein was a safe belonging to decedent; that among the contents of said safe was a pass book on savings account No. 9496 carried at the Bakersfield Branch of Security First National Bank, Bakersfield, California, standing in the name of decedent; that the funds on deposit in said savings account was the sum of $6,172.88.''

It is unnecessary to determine the question raised by appellant of whether respondent can impeach findings prepared by him, since the record supports the finding. Uncontroverted is the following testimony of appellant:

''Q. Did you look at the contents of it? A. Later.

''Q. When was that? A. At the time of the probate hearing, would that be it? The next time.

''Q. Whenever you did, what did you determine was in the safe then? A. There were a number of old letters. Among other things was his passbook, or savings account.''

Provisionally, respondent has raised one additional question. At the hearing the trust officer of the executor, Security First National Bank, was sworn as a witness on behalf of respondent. The witness was asked to relate a conversation with the testator which took place after both the will and codicil had been executed. The court sustained an objection to the testimony, and respondent made the following offer of proof:

''At this time, if the Court please, I would like to prove by this witness that in his conversation with the decedent at the time and place he has mentioned, the decedent told this witness that it was his intent by this will and codicil that this savings deposit book that has been referred to in the evidence

was to go to his daughter to be distributed pursuant to the provisions of the trust in the will.''

Respondent has asked this court to hold the ruling erroneous in the event the judgment of the trial court is reversed. Since we must reverse the judgment, we point out that the ruling was correct. It was held in *O'Farrell* v. *American Trust Co.*, 149 Cal.App.2d 691, 697 [309 P.2d 60], that:

''Oral declarations of a decedent, whether made before, at the time, or after, are excluded in connection with a matter of construction of a document unless they be instructions to the scrivener. (Prob. Code, § 105.) 'An exception to the exclusion of oral declarations of the testator is his instructions to a scrivener when offered to resolve an ambiguity in a will concerning the amount of a bequest.' [Citation.]''

Without intending to be facetious or sarcastic, it must be observed that the testator of a holographic will or codicil could hardly declare his intentions to a scrivener. The trial court properly excluded the proffered testimony.

The judgment is reversed.

Conley, P. J., and Brown, J., concurred.